IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-111-D-2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MARQUIZE MARCEL HARRIS, | ) | |
| Defendant. | ) | |

On April 12, 2021, Marquize Marcel Harris ("Harris" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 165]. Harris contends that the court should release him to care for his mother who allegedly has cancer. See [D.E. 165, 169]. On August 6, 2021, Harris, through counsel, filed a memorandum in support [D.E. 172]. On August 20, 2021, the government responded in opposition [D.E. 175]. On September 1, 2021 Harris replied to the government's response [D.E. 182]. As explained below, the court denies Harris's motion.

I.

On July 6, 2015, pursuant to a written plea agreement, Harris pleaded guilty to armed bank robbery and aiding and abetting, and discharging a firearm in relation to a crime of violence and aiding and abetting. See [D.E. 39, 41]. On April 13, 2016, Senior United States District Judge Malcolm J. Howard held a sentencing hearing. See [D.E. 81]. Judge Howard adopted the facts set forth in the PSR and resolved the government's objection and motion for downward departure. See id.; Fed. R. Crim. P. 32(i)(3)(A)–(B). After thoroughly considering the arguments of counsel and

all relevant factors under 18 U.S.C. § 3553(a), Judge Howard sentenced Harris to 4 months' imprisonment on count one and 120 months' consecutive imprisonment on count two, for a total sentence of 124 months' imprisonment. See [D.E. 81, 83].

On January 21, 2021, Harris's case was reassigned to the undersigned. On April 12, 2021, Harris moved for compassionate release based on his mother's cancer and his need to care for her. See [D.E. 165]. On August 16, 2021, the government responded in opposition. See [D.E. 175]. On September 1, 2021, Harris replied. See [D.E. 182].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

2

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S.

---

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Harris states that he has submitted a request to the warden and has not received a response. See [D.E. 172] 4; [D.E. 172-2] 3. The government does not challenge Harris's administrative exhaustion. See [D.E. 175] 4 n.5. Therefore, the court addresses Harris's motion on the merits. See United States v. Muhammad, 16 F.4th. 126, 130 (4th Cir. 2021).

Harris seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his motion, Harris cites the need to care for his mother, his rehabilitative efforts, and his release plan. See [D.E. 165] 1; [D.E. 172] 5–6, 9; [D.E. 172-2] 1. Harris does not argue that the COVID-19 pandemic is a basis for reducing his sentence.

As for the "family circumstances" policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only

5

available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Harris claims his mother has cancer and that he is the only available help for her. See [D.E. 165] 1; [D.E. 172] 5–6. The family circumstances policy statement does not apply to parents. Accordingly, reducing Harris's sentence is not consistent with application note 1(C). See U.S.S.G. § 1B1.13 cmt. n.1(C). Nevertheless, the court considers Harris's family circumstances under the "other reasons" policy statement.

Using the standards for an incapacitated spouse under the "family circumstances" policy statement as a guide in considering Harris's motion, Harris has failed to show that his mother's need for care qualifies as an extraordinary and compelling circumstance. The policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). BOP's Program Statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10; see also United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (unpublished) (relying on the BOP Program Statement), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Collins, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (unpublished) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well"); cf. cf. United States v. Taylor, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (unpublished) (cautioning against over reliance on the BOP Program Statement); United States v. Burrell, No. 15-

6

cr-95 (AJN), 2020 WL 7646887, at *2 (S.D.N.Y. Dec. 23, 2020) (acknowledging that a court may find extraordinary and compelling circumstances other than those in the application notes of U.S.S.G. § 1B1.13 or BOP guidance). The Program Statement also provides for incapacitation as a result of a "severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair." Id. It also explains that when evaluating the incapacitation of a spouse, the inmate must provide "adequate information and documentation" including, but not limited to, a statement and verifiable medical documentation regarding the spouse's incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse, and a statement and documentation regarding the inmate's release plan. Id.

Harris has provided some of his mother's medical records and has some release plan details that include residing with his mother and a plan to get a job at a pizza restaurant. See [D.E. 165] 1; Med. R. [D.E. 169]; [D.E. 171]; [D.E. 172]. The medical records do indicate that Harris's mother has had some medical issues including a hysterectomy surgery. [D.E. 171] 3. Although Harris and his mother stated that she had stage 1 cancer, see [D.E. 172-3] 1 and [D.E. 165]1, the records do not support a definitive post-surgical diagnosis of cancer. See Med. R. On February 24, 2021, Harris's mother was released from the hospital the day after her surgery. See id. at 3. She has had follow up appointments after the surgery. See id. at 4, 8. She was accessed for coronary artery disease and the records show that she visited a cardiologist for aortic valve regurgitation. See id. at 4–5, 13–16. Harris mother missed a scheduled appointment with her surgeon on June 3, 2021, but she made her scheduled appointment with her cardiologist on June 23, 2021. See id. at 12, 13–16.

Harris could help his mother if released. Harris has not shown, however, that his mother is incapacitated. Moreover, Harris has not provided records indicating that his mother is currently

7

"totally confined to a bed or chair" and "cannot carry on any self-care." And, the medical records do not indicate that her mental capacity is "severely affected." Moreover, although Harris and his mother contend that he is the only family member capable of caring for his mother, they have not provided any reasons why Harris's siblings, who live nearby, cannot assist other than the fact that they have "very busy and demanding lives." [D.E. 172-3] 1; see [D.E. 165]; PSR ¶ 25. Accordingly, even if parents were included in the "family circumstances" policy statement, Harris's need to care for his mother does not qualify as an extraordinary and compelling circumstance.

Alternatively, even if the court assumes that Harris's need to care for his mother, his efforts at rehabilitation, and his release plan are compelling reasons under section 3582(c)(1)(A), the section 3553(a) factors counsel against reducing Harris's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Harris is 36 years old and is incarcerated for armed bank robbery and aiding and abetting, and discharging a firearm in relation to a crime of violence and aiding and abetting. See PSR ¶¶ 1–3. Harris participated in an armed bank robbery. See id. ¶ 5. He threatened and pointed a firearm at a bank teller while she cleaned out her cash drawer. See id. Harris's co-defendant discharged a firearm during the robbery. See id. ¶ 7. The robbery involved the physical restraint of the victims to facilitate the offense and Harris's escape. See id. at ¶ 43. When authorities arrested Harris, he had marijuana, including partially smoked blunts, a 0.45 caliber magazine, and proceeds from the robbery. See id. ¶ 6.

Harris has a troubling criminal history. He has convictions for felony possession of marijuana, trespassing, resisting a public officer, and felony possession with intent to sell and deliver cocaine. See id. ¶¶ 14–17. Harris committed this offense because he owed his co-defendant money

8

for posting Harris's bond for an unrelated arrest. See id. ¶ 7.

Harris has a poor record on probation. He committed his federal offenses while on probation for a suspended felony drug conviction. See id. ¶ 17. He also has two supervision adjustments for probation violations. See id. ¶ 14, 17. Harris claims to have a good record while he has been federally incarcerated. See [D.E. 172-1] 1. Harris, however, has had three serious infractions while federally incarcerated, including gambling/running a gambling pool in 2017, using drugs/alcohol in 2020, and using another inmate's phone in 2021. See [D.E. 175-1] 1. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). As for rehabilitation, Harris has not earned his GED and has twice refused to participate in BOP's Residential Drug Addiction Program ("RDAP"). See [D.E. 177].[2] Having considered the entire record, the section 3553(a) factors, Harris's arguments, the government's persuasive response, the need to punish Harris for his serious criminal behavior, to incapacitate Harris, to promote respect for the law, to deter others, and to protect society, the court denies Harris's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Harris's request for home confinement, see [D.E. 172] 9, 10, Harris seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home

---

[2] Harris claims that his failure to get his GED and participate in drug treatment is due to the COVID-19 pandemic. See [D.E. 182] 5. Harris, however, was sentenced in 2016 and had ample time before COVID-19 to participate in these programs.

9

confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Harris requests that the court merely recommend home confinement to the BOP, the court declines. Thus, the court dismisses Harris's request for home confinement.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 165], and DISMISSES defendant's request for home confinement.

SO ORDERED. This 20 day of December, 2021.

JAMES C. DEVER III
United States District Judge

10

Case 5:15-cr-00111-D  Document 198  Filed 12/20/21  Page 10 of 10